*177 JUSTICE TRIEWEILER
dissenting.
¶22 I dissent from the majority opinion.
¶23 Section 46-5-221, MCA, provides that a search warrant may be issued when the applicant sets forth facts, under oath that are sufficient to establish probable cause to believe that an offense has been committed and that evidence connected with the offense may be found. It also requires that the applicant describe under oath what is to be seized. These statutory requirements are consistent with what we have held is required to establish probable cause for issuance of a search warrant. See State v. Kuneff, 1998 MT 287, ¶ 22, 291 Mont. 474, ¶ 22, 970 P.2d 556, ¶ 22. Article II, Section 11 of the Montana Constitution prohibits issuance of a search warrant without probable cause.
¶24 The application submitted for a warrant to search the home of the Defendants, Tony and Theresa Marks, provided no facts to establish probable cause that a crime had been committed. It provided no facts to establish probable cause that evidence of a crime would be found and it did not describe with any specificity the items to be seized. The fact that the majority would approve of the application places in serious doubt the continued viability of prior search and seizure case law and the majority’s commitment to the protection of Montanans from unreasonable searches and seizures.
¶25 The majority sets forth the following allegations from the application as evidence that a crime had been committed:
Deputy Fire Marshal Ted Warrant started to investigate the cause and origin of the fire and when he entered the house, he noticed that the house did not have a lot of furniture and clothing in the closets and it appeared to him that some of the contents of the house had been removed before the fire. He also noticed that the house had heavy fire/smoke damage, which was inconsistent with the home owners statement of being gone for only twenty minutes.
Detective Richardson then talked with Tony Marks, at which time he identified himself as a Billings police detective and member of the Arson Team and told him that the Fire Marshall [sic] thought the fire was suspicious and that [sic] arson investigation was going to take place. Marks stated “Do you think I torched my own house”. He was told that I did not know and and [sic] requested that he sign a consent to search allowing the team to search his house for evidence to this cause and origin of the fire *178 and any evidence of possible arson.
Tony Marks was reluctant to sign the consent to search, and talked with his brother Jim Marks who was also at the fire scene. Jim Marks called an attorney and talked to him about the consent to search. In the end, both Tony & Theresa did sign a consent to search, however, this consent was not used as Tony Marks was requesting to be present in the house during the search, and still was reluctant to have Police Officers inside his house.
¶26 None of these facts indicate that a crime had been committed. The fact that the house did not have a lot of furniture or clothing by itself was not significant unless compared to the normal contents of the house. There was no foundation to show that the furniture and clothing in the house at the time of the fire was any different than would normally have been present.
¶27 The fact that Theresa Marks estimated her absence from her home at 20 minutes and that the amount of damage done was greater than could have occurred in 20 minutes means absolutely nothing. The question is how long the fire burned. There is nothing in the affidavit to indicate when in the course of the fire’s suppression Theresa Marks returned to her home.
¶28 Finally, there was nothing atypical about Tony Marks’ reaction to the suggestion that the fire in his home was being investigated for arson. Nor is it in any way incriminating for a person to decline to have his or her home searched by the police. A person has as much right to invoke his right to be free from unreasonable searches and seizures as he or she does to invoke his right to remain silent. Otherwise the rights are meaningless.
¶29 Nothing set forth in the application for a search warrant amounts to more than a mere suspicion that the fire was intentionally started. However, a mere suspicion is not sufficient to establish probable cause of a crime. In State v. Lott (1995), 272 Mont. 195, 199, 900 P.2d 306, 309, we stated that:
“A mere affirmance of belief or suspicion by a police officer, absent any underlying facts or circumstances, does not establish probable cause for the issuance of a search warrant.” Here the affiant’s statement that appellant’s vehicles “may be used” to distribute drugs is unsupported by any underlying facts or circumstances. [Citation omitted.]
¶30 Nor are there any facts in the application for search warrant which would satisfy the requirement at § 46-5-221(2), MCA, that probable cause be established to believe that evidence maybe found on *179 the premises to be searched. Detective Blake Richardson made the following conclusory statement:
there have been and are now located certain items of personal property which are EVIDENCE and are particularly described as being:
CAUSE & ORIGIN OF THE FIRE TO INCLUDE, BUT NOT LIMITED TO IGNITABLE LIQUIDS, IGNITABLE LIQUID CONTAINERS, TIMING DEVICES, MATCHES, LIGHTERS, GAS TORCHES, CIGARETTES, ELECTRICAL EQUIPMENT, MECHANICAL EQUIPMENT, INSURANCE & FINANCIAL DOCUMENTS, PHONE RECORDS, EVIDENCE OF ITEMS BEING REMOVED FROM THE PRIOR TO THE FIRE.
¶31 However, not one additional fact was set forth in the affidavit to establish how Richardson arrived at this opinion. It is apparent from Richardson’s testimony why no further facts were set forth. At the time that he prepared the application, he had no idea how the fire had started. Therefore, he had no idea whether the items listed in the application would be found.
¶32 In Application of Gray (1970), 155 Mont. 510, 473 P.2d 532, we held that a search warrant had been illegally obtained when based on the same kind of conclusory statements. We held that:
Where, as here the affiant merely states the conclusion that the affiant “has knowledge and does believe” that the designated articles involved in the burglary are located on the premises to be searched it is insufficient to establish probable cause. This has long been held true under the Montana Constitution and statutes relating to the issuance of search warrants, facts enabling the magistrate to make a judicial determination of the existence of probable cause being required. Affidavits relied upon for the issuance of search warrants in both federal and state prosecutions must contain sufficient facts to enable an impartial commissioner or magistrate to determine whether probable cause exists under the Fourth Amendment. Here no facts whatever are given, only affiant’s ultimate conclusions that he has actual knowledge and believes that the designated articles are located upon the premises to be searched. [Citations omitted.]
Application of Gray, 155 Mont. at 519, 473 P.2d at 536-37.
¶33 The majority concludes that Gray is distinguishable but cites absolutely no facts from the application which would support probable cause to believe that evidence of a crime would be found in the home or particularly described what evidence was to be seized. Instead, the *180 majority recites every out of context platitude cited in the State’s brief which would justify a search without any facts. You can tell there are no facts to support the search warrant in this case when the majority has to refer to “common sense” eight times in its opinion-six times in the last two out of three paragraphs alone. The majority’s new mantra is “common sense.”
¶34 Common sense is good. Facts are better. More importantly, facts are statutorily and constitutionally required. Here none were offered. Furthermore, not all of Detective Blake Richardson’s conclusions demonstrate “common sense.” Therefore, I would reverse the District Court’s order denying the Defendants’ motion to suppress evidence seized pursuant to the search warrant and I dissent from the majority’s refusal to do so.