JUSTICE REGNIER
delivered the Opinion of the Court.
¶1 April T. Marks and Tony Marks (“the Markses”) appeal from the February 21,2001, Order entered by the Montana Thirteenth Judicial District Court, Yellowstone County, denying their motion to suppress evidence seized pursuant to a search warrant. We affirm.
¶2 The following issue is presented on appeal:
¶3 Whether the District Court erred in determining there was sufficient probable cause to support the issuance of a search warrant?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 The following facts were set forth in the application for a search warrant and are pertinent to our review: The Markses own a personal residence located at 310 Ecton Circle in Billings, Montana. At approximately 2:03 p.m. on October 27,1999, a neighbor called 911 to report a fire at the Markses’ home. Members of the Billings Fire Department arrived at the scene several minutes later. Upon arrival, *171 the firefighters observed flames coming from the windows and the roof in the northwest comer of the Markses’ home. Eventually, the fire was extinguished.
¶5 Mrs. Marks was at the scene as Fire Department officers contained the blaze. She stated to Fire Department Officer John Staley that she had left her home at approximately 2:00 p.m., returned approximately 20 minutes later and smelled smoke when she opened the door to her home.
¶6 After the fire was contained, Deputy Fire Marshal Ted Warren (“Deputy Marshal Warren”) entered the home and started to investigate the cause and origin of the fire. Upon entering the house, it appeared to him that some of the contents of the house had been removed before the fire because the house contained few items of furniture or clothing. He also noticed that the fire had caused heavy fire and smoke damage. In his opinion, such damage was inconsistent with an absence of only twenty minutes.
¶7 Detective Blake Richardson (“Detective Richardson”) of the Billings Police Department was called to the scene. Detective Richardson is a member of the Billings Arson Team, which is comprised of officers from the Billings Police Department, the Billings Fire Department, the Yellowstone County Sheriffs Office, and the Federal Bureau of Alcohol, Tobacco, and Firearms. Upon his arrival, Detective Richardson was informed by Deputy Marshal Warren that the fire appeared suspicious and an arson investigation should be conducted. Shortly thereafter, Detective Richardson spoke with Mr. Marks on the scene. Detective Richardson identified himself as a member of the Billings Arson Team and told him that the Fire Marshall thought the fire was suspicious and an arson investigation would be conducted. Mr. Marks then stated, “Do you think I torched my own house?” Detective Richardson responded that he did not know and requested that Mr. Marks sign a consent to search the house for evidence regarding the cause and origin of the fire. Mr. Marks was reluctant to sign the consent and spoke to his brother, who was also at the scene. His brother called an attorney regarding the consent to search. Subsequently, both Mr. and Mrs. Marks signed consents to search their house. However, their consents to search were not utilized since Mr. Marks was reluctant to allow officers into the house after signing the consent. Additionally, Mr. Marks stated that Mrs. Marks “was out of her mind and going bonkers about the fire.” The officers at the scene felt that Mrs. Marks’ consent to search would be invalid based on her state of mind. Consequently, Detective Richardson *172 applied for a search warrant that same day stating the aforementioned facts as grounds to establish probable cause. Finding probable cause, Justice of the Peace Pedro Hernandez issued a warrant to search the Markses’ home for ignitable liquids, ignitable liquid containers, timing devices, matches, lighters, gas torches, cigarettes, electrical equipment, mechanical equipment, insurance and financial documents, phone records, and evidence of items being removed from the premises prior to the fire.
¶8 During the search of the Markses’ home, the police seized financial and insurance documents and phone numbers for cellular phones owned by the Markses. The police later obtained investigative subpoenas to review additional financial documents and the Markses’ cellular phone accounts. The evidence seized implicated the Markses in the arson of their home. On August 10, 2000, the Yellowstone County Attorney filed separate informations charging Mr. and Mrs. Marks with arson in violation of § 45-6-103, MCA. On January 4,2001, the State filed an amended information charging Mr. Marks with arson by accountability in violation of § 45-6-103, MCA, and § 45-2-302, MCA.
¶9 On January 2, 2001, the Markses jointly filed a motion to suppress all evidence resulting from the search of their home. The District Court held a suppression hearing on February 8, 2001. On February 21, 2001, the District Court entered an Order denying their motion. Mrs. Marks pled guilty to the offense of arson and Mr. Marks pled guilty to the offense of arson by accountability on April 11, 2001, pursuant to the terms of their individual Alford plea agreements. The District Court entered Judgments against the Markses on July 10, 2001, sentencing Mrs. Marks to a three year suspended sentence and Mr. Marks to a five year suspended sentence. The Markses appeal. For purposes of appeal, the Markses’ cases were consolidated.
STANDARD OF REVIEW
¶10 We review a district court’s denial of a motion to suppress to determine whether the court’s findings of fact are clearly erroneous and whether the court’s interpretation and application of the law is correct. See State v. Gray, 2001 MT 250, ¶ 10, 307 Mont. 124, ¶ 10, 38 P.3d 775, ¶ 10 (citing State v. Reesman, 2000 MT 243, ¶ 18, 301 Mont. 408, ¶ 18, 10 P.3d 83, ¶ 18).
DISCUSSION
¶11 Whether the District Court erred in determining there was *173 sufficient probable cause to support the issuance of a search warrant?
¶12 The Markses argue that the application for search warrant prepared by Detective Richardson does not meet the requirements of § 46-5-221, MCA. First, they allege that the application does not meet the requirements of § 46-5-221(1), MCA, because it establishes only suspicion, not probable cause, that the crime of arson was committed. Second, they claim the application presented in this matter is analogous to the application invalidated in Application of Gray (1970), 155 Mont. 510, 473 P.2d 532, since both applications failed to state facts upon which a finding of probable cause could be made that any of the property or items to be seized were connected with the offenses allegedly committed, as required by § 46-5-221(2), MCA. Third, they assert the application sets forth no facts to establish probable cause that any of the items to be seized would be found in their home. Because of these failures, the Markses contend that the search warrant is invalid, the search unconstitutional, and the evidence seized must be suppressed.
¶13 In response, the State maintains the totality of the circumstances set forth in the four comers of the warrant application established a fair probability that the crime of arson had occurred at the Markses’ residence. In particular, the State points out that the court issuing the warrant was informed that a sizable fire had consumed a home nearly devoid of furniture or personal belongings. In addition, the warrant application provided that Mrs. Marks’ statements regarding her length of absence were inconsistent with the magnitude of fire damage. Further, the application stated facts demonstrating that Mr. Marks’ behavior was atypical of a fire victim. The State additionally argues that these facts, as evaluated in a practical and common-sense manner by the issuing magistrate, established a substantial basis to believe the evidence sought was connected to the crime of arson and would be found in the Markses’ residence. We agree.
¶14 Pursuant to § 46-5-101(1), MCA, a search of a place may be made and evidence may be seized by the authority of a valid search warrant. A warrant is valid if the application made in support thereof states facts sufficient to show probable cause in accordance with the requirements of § 46-5-221, MCA. See State v. Kuneff, 1998 MT 287, ¶ 21, 291 Mont. 474, ¶ 21, 970 P.2d 556, ¶ 21 (citation omitted). Section 46-5-221, MCA, provides:
Grounds for search warrant. A judge shall issue a search warrant to a person upon application, in writing or by telephone, made under oath or affirmation, that:
*174 (1) states facts sufficient to support probable cause to believe that an offense has been committed;
(2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;
(3) particularly describes the place, object, or persons to be searched; and
(4) particularly describes who or what is to be seized.
¶15 We have adopted the “totality of the circumstances” test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, to determine whether probable cause exists. See Gray [1], ¶ 13 (citation omitted). The Court in Gates held that:
The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and ‘basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. We have held that probable cause exists when the facts and circumstances presented “would warrant an honest belief in the mind of a reasonable and prudent man that the offense has been, or is being, committed and that the property sought exists at the place designated.” Kuneff, ¶ 22 (quoting State v. Isom (1982), 196 Mont. 330, 343, 641 P.2d 417, 424). Therefore, a determination of probable cause does not require facts sufficient to make a prima facie showing of criminal activity. See State v. Griggs, 2001 MT 211, ¶ 27, 306 Mont. 366, ¶ 27, 34 P.3d 101, ¶ 27 (citations omitted). Rather, the issuing magistrate must only determine that there is a fair probability that an offense has been committed and that the contraband or evidence sought will be found at the place designated. See Griggs, ¶ 27 (citations omitted).
¶16 Under the totality of the circumstances test, we must look solely to the four corners of the search warrant application. See Gray, ¶ 13 (citation omitted). In doing so, we must refuse to review a search warrant application sentence by sentence. See Gray, ¶ 11 (citation omitted). Instead, we must examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude probable cause existed. See Gray, ¶ 11 (citation omitted). As the United *175 States Supreme Court pointed out in Gates:
The [probable cause] process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain commonsense conclusions about human behavior; jurors as factfinders are permitted to do the same and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
Gates, 462 U.S. at 231-232, 103 S.Ct. at 2328-2329, 76 L.Ed.2d at 544.
¶17 After evaluating the facts contained in the four comers of Detective Richardson’s search warrant application, in fight of the totality of the circumstances test, we conclude that the requirements of § 46-5-221, MCA, were fulfilled. Pursuant to § 46-5-221(1), MCA, the application set forth facts establishing a fair probability that the crime of arson had occurred at the Markses’ residence. Most notably, Detective Richardson stated facts demonstrating that furniture and clothing were removed from the Markses’ home prior to the fire; Mrs. Marks’ statements regarding her length of absence conflicted with the time the fire was reported and the extent of fire damage; and the behavior of Mr. Marks was atypical of a fire victim. While such facts do not necessarily establish a prima facie showing that arson was committed, the facts do warrant the determination by a reasonable and prudent person that there is a fair probability criminal activity occurred.
¶18 Moreover, we conclude that the facts presented in Application of Gray are distinguishable from those presented in this case. In Application of Gray, the affiant stated no facts that a crime was committed or that the evidence sought was connected to the crime allegedly committed. Application of Gray, 155 Mont. at 519, 473 P.2d at 537. Instead, the affiant merely stated that he “has actual knowledge and does believe” that the designated articles involved in the crime of burglary were located on the premises to be searched. Application of Gray, 155 Mont. at 518-519, 473 P.2d at 536. Here, Detective Richardson did not merely provide conclusory statements. Rather, he stated multiple facts supporting his conclusion that the crime of arson was committed at the Markses’ residence. We have repeatedly emphasized that in our review “it is critical that we pay great deference and draw every reasonable inference possible to support a magistrate’s determination that probable cause exists.” Gray, ¶ 13 (citing Reesman, ¶ 19). We have pointed out that:
*176 At some point we must lend credence to the judgment of law enforcement officers whose training and experience invoke common-sense conclusions about human behavior. So long as officers provide reasonable justifications for their conclusions, we will not disturb a finding of probable cause for the issuance of a search warrant.
Gray, ¶ 32. Therefore, we will examine a search warrant application in a “common sense, realistic fashion and without a grudging or negative attitude that will tend to discourage police officers from seeking warrants.” State v. Rinehart (1993), 262 Mont. 204, 210-211, 864 P.2d 1219, 1223 (citation omitted).
¶19 After reviewing the facts presented in the search warrant application in a common sense, realistic fashion, we conclude that Detective Richardson provided reasonable justifications for his conclusion that evidence connected to the crime of arson would be found at the Markses’ residence pursuant to the requirements of § 46-5-221(2), MCA. A common sense evaluation unquestionably establishes a fair probability that evidence relating to the cause and origin of a fire will be found where the fire occurred. Similarly, a common sense review establishes a fair probability that the items sought in Detective Richardson’s warrant application are connected to the crime of arson. For instance, insurance and financial documents tend to establish whether or not an individual had a motive to commit arson. See Emcasco Insurance Co. v. Waymire (1990), 242 Mont. 131, 788 P.2d 1357. Thus, giving credence to Detective Richardson’s training and experience, it was reasonable for him to conclude that such items would be connected to the offense of arson. Determining otherwise would negate a common sense evaluation and contradict long established precedent affording great deference to a magistrate’s determination that probable cause exists. Additionally, such a determination would tend to discourage law enforcement from seeking warrants.
¶20 Furthermore, we conclude that the warrant application particularly stated the place to be searched and the items to be seized in accordance with § 46-5-221(3)-(4), MCA. Consequently, we hold that the District Court properly concluded that sufficient probable cause was established pursuant to the requirements of § 46-5-221, MCA, to support the issuance of a search warrant.
¶21 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES LEAPHART, COTTER and RICE concur.

 All references to Gray hereinafter in this Opinion refer to State v. Gray, 2001 MT 250, 307 Mont. 124, 38 P.3d 775.